In the Matter of the MARRIAGE OF Ola Donville MOORE and Dorothy E. Moore.

No. 07–93–0294–CV.

Court of Appeals of Texas, Amarillo.

Nov. 8, 1994.

Order Overruling Rehearing and Reforming Judgment on Remittitur Dec. 9, 1994.

Purdom Law Offices, Thomas J. Purdom, Lubbock, for appellant.

Carr, Fouts, Hunt, Craig, Terrill & Wolfe, Gary Bellair, Donald M. Hunt, and Aubrey Jan Fouts, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

In this appeal, appellant Ola Donville Moore (Mr. Moore) challenges the judgment entered in his divorce action against appellee Dorothy E. Moore (Mrs. Moore). In seventeen points of error, Mr. Moore asserts that the trial court erred during the course of the trial and, in rendering judgment, made an improper division of separate and community property. For the reasons later set forth, we find the trial court erred in awarding Mrs. Moore $26,000 in damages for Mr. Moore's "breach of fiduciary duty." Accordingly, unless Mrs. Moore files a voluntary remittitur in that amount within twenty days, we will sever the portion of the trial court judgment making division of the property and remand that portion to the trial court, affirming the remainder of the judgment. If, however, she timely files the remittitur, we will affirm the judgment of the trial court.

Mr. Moore and Mrs. Moore married on November 6, 1971. During their marriage, Mr. Moore, a farmer by trade, managed virtually all of the financial transactions of the community estate. Mrs. Moore served the community in her capacity as homemaker. On September 18, 1991, Mr. Moore filed for divorce. Mrs. Moore counterclaimed for divorce and sought, as relevant to this appeal, reimbursement to the community estate for "funds, assets, time, labor and talent expended by the community estate to benefit or enhance [Mr. Moore's] alleged separate estate." She also brought a separate cause of action seeking recovery of actual and exemplary damages for Mr. Moore's alleged breach of his fiduciary duty to the community estate.

After a jury trial, and based in part upon the jury's verdict, the trial court entered the judgment resulting in this appeal. In that judgment, the court ordered the divorce of the parties, divided the community estate, granted Mrs. Moore's claim for reimbursement in the amount of $21,096, and awarded a $40,000 judgment in Mrs. Moore's favor for Mr. Moore's breach of fiduciary duty. Hence, this appeal.[1]

We immediately note that most, if not all, of Mr. Moore's points of error are improperly multifarious. *Kroger Co. v. Cellan,* 560 S.W.2d 505, 507 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.); Tex.R.App.P. 74. We will, nevertheless, address the issues presented by those points as we understand them and in such sequence as we deem logical.

## I. BREACH OF FIDUCIARY DUTY

In her counterclaim for divorce, Mrs. Moore alleged that Mr. Moore, who "was entrusted with the management, control and disposition of substantially all of the community estate and funds," willfully and intentionally violated his fiduciary duty to Mrs. Moore. Specifically, Mrs. Moore asserted the following violations:

1. organizing and operating an alleged separate property corporation;

2. transferring or issuing stock to his third party family members without compensation from said parties;

---

1. A more detailed discussion of the facts, which are issue specific, is presented in the argument addressing each point of error.

3. devoting community assets, time, labor and talent for the benefit of the corporation for the purpose of depriving Mrs. Moore of her interest and rights in and to community property which, otherwise, would have been accumulated with the assets and funds devoted to the corporation;

4. making loans and gifts of community assets, including gifts of stock in the corporation, to third parties for the purpose of depriving Mrs. Moore of her community property rights;

5. failing to devote his time, labor and talent to the enhancement of the value of the community estate of the parties and, instead, devoting such intangible community assets to enhancing either his separate property or the property of his third party family members;

6. failing to make full disclosure of community assets so as to deprive Mrs. Moore of a just and right division of the marital estate;

7. concealing community assets and income so as to deprive Mrs. Moore of a just and right division of the marital estate; and

8. engaging in a course of conduct designed and intended to deprive Mrs. Moore of a just and right division of the marital estate.

In addition to alleging that these actions proximately caused her damages, Mrs. Moore sought exemplary damages "by virtue of the wilful and intentional breach." Although Mr. Moore specially excepted to the allegations of breach, the record does not show any ruling on those exceptions. Presumably, however, the exceptions were overruled as the trial proceeded upon Mrs. Moore's original cause of action for breach of fiduciary duty.

In his first point, Mr. Moore asserts that the trial court erred in treating Mrs. Moore's allegation of his breach of fiduciary duty "as a cause of action separate from the divorce action." He additionally argues that the trial court erred in assessing separate damages for the alleged breach rather than treating his actions as factors to be considered in making a just and right division of the community estate.

In response to his first point, Mrs. Moore initially points out that the record does not contain a ruling on Mr. Moore's special exceptions regarding the breach of fiduciary duty cause of action. Mrs. Moore asserts that by his failure to have the ruling included in the record, Mr. Moore has waived this challenge. Alternatively, she contends that even if he did not waive the error claimed, Mr. Moore's point must still be overruled "because a spouse's fraud on the community is an appropriate basis for separate damages."

As we understand it, the gravamen of Mr. Moore's first point is that the trial court erred in treating the breach of fiduciary duty allegation as a separate cause of action both in the pleadings and in the court's judgment. That interpretation necessarily impinges upon the errors specifically alleged in Mr. Moore's points of error two through eight. Therefore, in our discussion of these ensuing points, in addition to discussing the errors specifically alleged in those later points, we will discuss the possible impact his first point contention might have upon the specifically alleged errors.

### A. Special Exceptions—Points 1, 2, and 3

■ We construe the first point of error to assert that the trial court erred in treating the breach of fiduciary duty allegations as a separate cause of action in the *pleadings*. In his second and third points of error, Mr. Moore contends that the trial court erred in overruling his special exceptions to Mrs. Moore's breach of fiduciary duty action.[2] However, Mrs. Moore correctly contends

---

2. Mr. Moore specially excepted to Mrs. Moore's pleadings alleging a cause of action for breach of fiduciary duty on the grounds that they (1) did not state a cause of action for which relief could be granted, and (2) were vague and did not give fair notice of the grounds for relief.

that Mr. Moore waived points one through three, as regarding the pleadings, by failing to get a ruling on his special exceptions.

■ It is an appellant's burden, on appeal, to present to the appellate court a sufficient record clearly showing any error of which he complains. Tex.R.App.P. 50(d). It is the rule that if defective allegations are made in the pleadings, the denial of a special exception to those allegations preserves any such error in the pleadings, *see Cluck v. Cluck,* 647 S.W.2d 338, 340 (Tex.App.—San Antonio 1982, writ dismissed), as well as any alleged error in the trial court's rulings on the special exceptions. However, without a record demonstrating the trial court's ruling on the exceptions, there is nothing for this court to review in that regard. *Dodson v. Citizens State Bank of Dalhart,* 701 S.W.2d 89, 95 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.); *Wichita Building Corp. v. Lenz,* 458 S.W.2d 829, 830–31 (Tex.Civ.App.—Fort Worth 1970, no writ).[3] That being true, we must, and do overrule that part of appellant's first point dealing with this alleged error together with his first and second points.

## B. *Award of Damages—Points 1 and 8*

We also interpret Mr. Moore's first point to allege that the trial court erred in treating Mrs. Moore's breach allegation as a separate cause of action in the *court's judgment.* More specifically, Mr. Moore alleges in his first point of error that the trial court erred in assessing damages "separate from the division of the estate of the parties" and, in his eighth point, he alleges the trial court erred in granting, in its judgment, $40,000 damages for breach of fiduciary duty.

■ Initially, we note that a fiduciary relationship exists between a husband and a wife as to the community property controlled by each spouse. *Carnes v. Meador,* 533 S.W.2d 365, 370 (Tex.Civ.App.—Dallas 1975,

writ ref'd n.r.e.). The breach of a legal or equitable duty which violates this fiduciary relationship existing between spouses is termed "fraud on the community," a judicially created concept based on the theory of constructive fraud. *Jackson v. Smith,* 703 S.W.2d 791, 795 (Tex.App.—Dallas 1985, no writ). Any such conduct in the marital relationship is termed fraud on the community because, although not actually fraudulent, it has all the consequences and legal effects of actual fraud in that such conduct tends to deceive the other spouse or violate confidences that exist as a result of the marriage.

As Mr. Moore exclusively managed and controlled the community estate of the marriage, he assumed a fiduciary duty to Mrs. Moore with respect to such property. Therefore, the only recourse available to Mrs. Moore for any acts Mr. Moore may have taken in violation of this fiduciary duty was an action for fraud on the community. That is to say, because of their common heritage, an allegation of breach of fiduciary duty in a divorce context and a claim of fraud on the community are the same creatures.

Having made this initial determination, we must now decide whether a claim for breach of fiduciary duty may be brought as an independent cause of action in a suit for divorce. Mr. Moore cites *Belz v. Belz,* 667 S.W.2d 240 (Tex.App.—Dallas 1984, writ ref'd n.r.e.), for the proposition that an action for fraud on the community may not be brought as a separate cause of action for which damages may be recouped by one spouse against the other during marriage. *Id.* at 243. In *Belz,* the wife filed a cross-action against her husband after he sued for divorce. *Id.* at 242. In her petition, she alleged, in a separate count, that the husband had committed fraud on the community in that his "intentional actions deprive[ed] her of property belonging to her by virtue of her interest in the community estate." *Id.* at 246. The trial court

---

3. Although the trial court's docket sheet shows that a hearing was held on the special exceptions and that an order was entered in the court's minute book, the docket sheet does not clearly indicate the court's rulings on any of the excep-

tions. As such, the docket sheet does not supply the necessary rulings needed to preserve error. *See McAdams v. Capitol Products Corp.,* 810 S.W.2d 290, 291–92 (Tex.App.—Fort Worth 1991, writ denied).

submitted the issue to the jury as a separate common law action in tort for fraud. Finding that the husband had defrauded the community estate, the jury awarded the wife actual damages, exemplary damages, and attorney's fees.

The court of appeals, however, reversed the trial court's judgment carrying into effect the jury's findings in this respect. In doing so, the *Belz* court held that the trial court erred in submitting an issue regarding the husband's fraud on the community as a separate cause of action because such a claim could only be asserted for the trial court's consideration in the division of the community estate. *Id.* at 243.

In the course of its holding, the *Belz* court also distinguished cases allowing a spouse to recover damages, in the context of a divorce proceeding, for other intentional torts committed upon the spouse during marriage. The distinction, the court noted, was that the torts involved in those cases resulted in a loss to the spouse's separate estate, while the tort of fraud on the community is necessarily perpetrated upon a spouse's interest in the community estate of the parties. *Id.* at 246–47.

In rebuttal, Mrs. Moore cites the cases of *Swisher v. Swisher,* 190 S.W.2d 382 (Tex.Civ. App.—Galveston 1945, no writ) and *Fanning v. Fanning,* 828 S.W.2d 135 (Tex.App.— Waco 1992), *modified,* 847 S.W.2d 225 (Tex. 1993), as standing for the proposition that a "spouse's fraud on the community is an appropriate basis for separate damages" and that a "defrauded spouse may recover damages for a managing spouse's fraud upon the

community." However, neither of these cases directly address the question of whether a separate cause of action for fraud on the community exists in a divorce action.

■ Initially, we note that it is established that a trial court may award a money judgment to one spouse, even as damages for the other spouse's fraud on the community. *See Murff v. Murff,* 615 S.W.2d 696, 699 (Tex. 1981); *Kidd v. Kidd,* 584 S.W.2d 552, 555 (Tex.Civ.App.—Austin 1979, no writ); *Wisdom v. Wisdom,* 575 S.W.2d 124, 125–26 (Tex.Civ.App.—Fort Worth 1978, writ dism'd); *Goren v. Goren,* 531 S.W.2d 897, 900 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ dism'd). However, that type of personal judgment is merely a means for recouping the defrauded spouse's share of the community property lost as a result of the wrongdoing spouse's breach of the trust relationship. *Mazique v. Mazique,* 742 S.W.2d 805, 808 (Tex.App.—Houston [1st Dist.] 1987, no writ) (citing *Belz,* 667 S.W.2d at 247 and *Swisher,* 190 S.W.2d at 385). Such a recovery is not awarded as "separate damages" for an independent cause of action.

We do not agree that the *Fanning* and *Swisher* [4] cases stand for the proposition that a spouse may bring a separate cause of action for fraud on the community or recover separate damages when such fraud is alleged. In her argument, Mrs. Moore places primary reliance upon the opinion of the court of appeals in *Fanning.* In that case, the trial court found that the husband breached his spousal fiduciary duty to his wife and that the wife suffered damage in the amount of $245,000. *Id.* at 147. Specifically,

---

4. Mrs. Moore relies upon the *Swisher* case as demonstrating that *Belz* was "not the first word" on the issue of whether she could "recover a judgment for the damages caused by the breach of [Mr. Moore's] fiduciary duties." Specifically, she relies upon the *Swisher* court's quotation of Speer, *Law of Marital Rights in Texas, 1929:* "The remedy of the wife who is defrauded by the husband's wrongful disposition of the community is not confined to a recovery of the property, for obviously this may be impossible, but there is no reason why she may not have her action against him personally for her loss. He would no more have the right fraudulently to appropriate her community property than her separate proper-

ty." In *Swisher,* however, the husband sold a majority of the community property after separating from his wife and claimed that he could not remember to whom he sold the items. *Swisher,* 190 S.W.2d at 383. The court awarded to the husband all of the remaining community property, which was in his mother's possession, and awarded the wife a money judgment of $1,500, an amount less than half of the value of that community property. *Id.* at 383–84. Because of the particular facts of the *Swisher* case, we do not find it to be persuasive.

the trial court found that the husband diverted community property to his paramour and her family, disposed of community property without the wife's consent, and disposed of and/or secreted certain other community property. However, in its review, the appellate court held that the husband had established that certain of the property he disposed of and/or secreted was not community property and that the trial court erred in holding to the contrary. Therefore, the court of appeals held that the damage award was excessive and reversed and remanded the case for a redetermination of damages. *Id.* at 152.

A careful examination of the opinion of the court of appeals in *Fanning* convinces us that the court considered the damages awarded by the trial court to be compensation to the community for its loss of property and reimbursement to the wife in the form of a money judgment for her share of the displaced community assets. That interpretation is consistent with the scenario of the wife's inclusion of an allegation of the husband's fraud in the pleadings and the trial court's subsequent division of the community, taking into consideration the husband's fraud, effected by an award of a money judgment to the wife. Our conclusion is supported by the court of appeals' characterization of the damages award as the "amount of community funds disposed of unfairly by [the husband]." *Id.* at 149.

As additional authority for her position, however, Mrs. Moore relies upon certain language in the opinion delivered by the supreme court after a writ of error was granted in *Fanning*. Without hearing oral argument, the supreme court reversed the portion of the court of appeals' opinion which required the trial court to enforce a premarital agreement which had been declared unconstitutional by the trial court. *Fanning v. Fanning*, 847 S.W.2d 225, 226 (Tex.1993). The

supreme court affirmed in all other respects. The specific language in the opinion upon which Mrs. Moore relies is as follows:

> It may be necessary for the trial court to redetermine the property division regardless of the enforceability of the premarital agreement, but it need not redetermine damages unless the agreement is found to be enforceable. If the damages [the wife] claims for breach of fiduciary duty are unliquidated and a retrial to determine those damages is necessary, [the husband's] liability for alleged breaches must also be retried as long as that liability is contested.

*Id.*

When considered in its context, we do not believe that the high court, by using the above quoted language, implicitly held that a defrauded spouse may bring a separate cause of action, and recover separate damages, for fraud on the community. Rather, the court was explicating that if, upon retrial, the trial court determined the premarital agreement was not enforceable, it would be necessary for it to redetermine the amount of community property, if any, which was, in fact, fraudulently transferred. Such a redetermination would, of course, affect the amount of the judgment which might be awarded to the innocent spouse. Summarized, we do not agree that the *Fanning* courts "implicitly" allowed a new and independent cause of action for fraud on the community, with separate damages, to be brought in a divorce action.[5] Moreover, we hold that no such new and independent action is recognized in this state.

■ Mrs. Moore also contends that "[i]n the event that this court finds that *Belz* is controlling, [we] should not set aside the entire judgment because $10,000 of the $40,-000 judgment is an award for [Mrs. Moore's] mental anguish, an injury for which she is

---

5. Parenthetically, as the issue of whether a suit for breach of fiduciary duty or fraud could be brought as a separate cause of action in the divorce context was not presented to the *Fanning* court, any action of the court in allowing the judgment to stand cannot be construed as an implicit approval of such a separate cause of action.

entitled to recover." [6] Mental anguish, however, is only an element of an award of damages and cannot stand alone without an affirmative finding that an independent tort has been committed. *See Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex.1993) (a claimant may recover mental anguish damages only in connection with defendant's breach of a legal duty); *Navistar Intern. Transp. Corp. v. Crim Truck & Tractor Co.*, 791 S.W.2d 241, 245 (Tex.App.—Texarkana 1990), *aff'd*, 823 S.W.2d 591 (Tex.1992) (any recovery of damages for mental anguish is eliminated when there is no recovery for an alleged tort as mental anguish damages are predicated upon an affirmative finding that a tort has occurred). Therefore, our holding that no separate cause of action for fraud on the community exists in a divorce suit upon which a separate recovery may be had also precludes an award of damages for mental anguish.

Accordingly, we sustain Mr. Moore's first and eighth points of error.

### C. Submission of Instructions— Points 6 and 7

The court instructed the jury as to Mrs. Moore's breach of fiduciary duty cause of action as follows:

A relationship of confidence and trust exists between a husband and wife with regard to that portion of the community property that each controls. This relationship requires that the spouses use the utmost good faith and frankness in their dealings with each other. Because of the nature of the spousal relationship, conduct of a spouse affecting the property rights of the other spouse may be fraudulent even though identical conduct would not be fraudulent as between non-spouses.

A fiduciary relationship arises from the confidential relationship existing between husband and wife. The fiduciary relationship requires a spouse who has management and control over community assets to refrain from abusing the confidence or trust by obtaining an advantage to himself or for the benefit of others at the expense of the other spouse.

In a transaction involving the transfer of community assets by a spouse to himself or others without consideration, the burden of proof is on such spouse to show the transaction was fair to the other spouse.

In his sixth point of error, Mr. Moore contends the trial court erred in submitting the above instructions to the jury regarding the alleged "breach of fiduciary duty" because the instructions "were not proper and were not such as would enable the jury to render a verdict on that issue." Specifically, he argues that the instructions "did not include necessary elements of a cause of action for breach of fiduciary duty." In supporting argument, Mr. Moore posits the instructions were based upon the "separate cause of action theory," that they were vague and general and, further, that they did not conform to Mrs. Moore's pleadings. He also argues that the instructions were erroneous as they were not the suggested instructions in the Pattern Jury Charges.

Rule 274 of the Texas Rules of Civil Procedure provides:

A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections.

The purpose of Rule 274 is to afford trial courts the opportunity to correct errors in the charge by requiring that any objection made clearly designate the error and explain the grounds for complaint. *Castleberry v. Branscum*, 721 S.W.2d 270, 276 (Tex.1986). Therefore, when a particular instruction included in the trial court's charge to the jury

---

**6.** By citing several divorce cases awarding damages for personal injuries sustained by one spouse at the hands of the other spouse, we infer that appellee is claiming that "mental anguish" is a "[personal] injury for which she is entitled to recover."

is defective, the complaining party must make a timely and specific objection pointing out the matter complained of and the ground of the objection. If the objection does not fully comply with the requisites of Rule 274, the party waives the complaint. *Kirkpatrick v. Memorial Hospital of Garland*, 862 S.W.2d 762, 769 (Tex.App.—Dallas 1993, writ denied). Even though an instruction may be erroneous, a party waives the error if he does not properly object. *Castleberry*, 721 S.W.2d at 276.

■ During the trial of this cause, Mr. Moore made the following objections to the instructions concerning the alleged breach:

1. There is no evidence, and in the alternative, there is insufficient evidence ... to give those instructions;

2. The instructions are based upon cases and the theory of fiduciary relationship which ... involves a situation where property is transferred to someone else outside the marriage, and in this case there is no such evidence;

3. If there is an entity or a person outside the marital relationship ... to whom some sort of property has been conveyed or some time effort has been related to ... if that is what this (sic) fiduciary relationship instructions ... have to do with, then the court should specifically instruct the jury with regard to what is referred to;

4. [I]f the theory behind this submission of this issue is some sort of transfer of property to someone outside the marital relationship, [the instruction] would be unsupported by the pleadings in this case;

5. [The instructions] are global in nature and do not give this jury any specifics upon which they could base any opinion;

6. [The instructions] are so vague and unclear as to their meaning that the jury has no guidance;

7. The instructions ... are so general and global in nature as to be improper in the court's charge; and

8. [T]he instructions ... are a part of the pattern engaged in by the respondent in this case to submit to this jury so many ambiguous and unnecessary instructions ... as to create in their mind that there must be something wrong.

Clearly, Mr. Moore failed to object to the omission of an instruction setting forth the necessary elements for a cause of action for fraud on the community. Neither did he object to the trial court's failure to follow the Pattern Jury Charges in its instructions or the court's submission of the instructions on the separate cause of action theory. Consequently, he has waived these alleged errors.

Although Mr. Moore did make timely objections to the trial court regarding his arguments that the instructions were vague and general and that they did not conform to the pleadings, those objections failed to adequately inform the trial court of the alleged errors. He has, therefore, waived any complaint as to the instructions. *See Ron Craft Chevrolet, Inc. v. Davis*, 836 S.W.2d 672, 675 (Tex.App.—El Paso 1992, writ denied) (objection that the pleadings did not support the submission of the charge was too general to preserve error); *Coleman v. State*, 735 S.W.2d 475, 477 (Tex.App.—Houston [1st Dist.] 1987), *vacated*, 788 S.W.2d 369 (1990) (objection that instruction is vague and misleading does not apprise the court of anything); Tex.R.App.P. 52(a). Consequently, point of error six is overruled.

In his seventh point, Mr. Moore asserts that the trial court erred in submitting instructions to the jury relating to *damages* suffered by Mrs. Moore as a result of the alleged breach. Again, he contends that the issues "were not proper and were not such as would enable the jury to render a verdict on that issue." Specifically, he argues that the instructions "included elements of damage upon which there was legally and factually insufficient evidence."

In reviewing the record, we cannot find any instructions in the trial court's charge to the jury relating to damages for the alleged breach. Therefore, Mr. Moore's seventh point is without merit and is overruled.

### D. Submission of Jury Questions— Points 4 and 5

In its charge, the trial court submitted the following questions to the jury to which they responded with the corresponding answers:

Did O.D. Moore breach his fiduciary duties to Dorothy Moore? ANSWER: Yes

What sum of money, if paid now in cash, would fairly and reasonably compensate Dorothy Moore for the damages, if any, resulting from the breach of fiduciary duties by O.D. Moore?

A. Disposition of community assets, including time, labor and talent, in transactions which were not fair to Dorothy Moore? ANSWER: $14,000.00

B. The concealment or attempted concealment of the existence or value of community assets? ANSWER: $10,000.00

C. Failure of O.D. Moore to fairly share community property resources with Dorothy Moore? ANSWER: $6,000.00

D. Mental anguish suffered by Dorothy Moore arising from the breaches of fiduciary duty of O.D. Moore? ANSWER: $10,000.00

In his fourth point of error, Mr. Moore argues that the trial court erred in submitting the question to the jury inquiring as to whether he breached his fiduciary duties to Mrs. Moore. In his fifth point, he contends that the trial court erred in submitting the questions regarding what sum of money would reasonably compensate Mrs. Moore for the alleged actions constituting the breach and for any mental anguish she suffered thereby. Specifically, Mr. Moore asserts that the court erred in submitting the above questions because "[t]he evidence [was]: a. factually insufficient; b. legally insufficient; and c. so against the greater weight and preponderance of the evidence as to be manifestly unjust."

■ A complaint that a court erred in submitting a question to the jury because the evidence was "factually insufficient" or was "against the great weight and preponderance" of the evidence is without merit. *Clarostat Mfg., Inc. v. Alcor Aviation, Inc.*, 544 S.W.2d 788, 791 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.). The factual insufficiency of the evidence to sustain an affirmative finding to a party's question does not furnish the trial court a basis for refusing to submit the question to the jury. *Strauss v. LaMark*, 366 S.W.2d 555, 558 (Tex.1963); *Imperial Insurance Co. v. Ellington*, 498 S.W.2d 368, 375 (Tex.Civ.App.—San Antonio 1973, no writ). Rather, a trial judge may refuse to submit an issue only if there is no evidence warranting its submission. *Brown v. Goldstein*, 685 S.W.2d 640, 641 (Tex.1985). We must, therefore, confine our discussion to the question of whether there was any evidence of probative value to support the trial judge's submission of the questions to the jury.

Fraud on the community typically involves a situation where one spouse unfairly disposes of the other spouse's one-half interest in *tangible* community property. In this case, however, the only alleged transfer of tangible community property involved Mr. Moore's transfer of "stock [in the corporation O.D. Moore, Inc.] to his third party family members." The only other allegation made concerning an unfair disposition of a community asset involved Mr. Moore's devotion of time, labor and talent to the corporation.

■ There is some evidence in the record to support the trial court's submission of the question regarding whether Mr. Moore breached his duties to the community. The record shows that Mr. Moore devoted community time, labor and talent to O.D. Moore, Inc. There was also evidence that the corporation, in which Mr. Moore was a fifty percent stockholder and served as president and treasurer, retained all of its earnings and did not compensate Mr. Moore for his services. This was some evidence, as argued in Mrs. Moore's brief, that Mr. Moore "effectively transferred to [Pam] Reed (Mr. Moore's daughter and the only other stockholder)" his community time, labor and talent. Because of this evidence, the trial judge did not err in submitting the question regarding the existence of any fraud on the community to the jury. Accordingly, Mr. Moore's fourth point is overruled.

For the reasons expressed above, we have held that no separate cause of action exists to recover for the wrongful actions of a defrauding spouse. That being so, the trial court erred in submitting the jury questions regarding Mr. Moore's concealment of community assets, his failure to share community property resources with Mrs. Moore, and any mental anguish she may have suffered as a result thereof. Therefore, his fifth point is sustained to that extent. It is, however, overruled insofar as it attacks the submission of the jury question inquiring whether Mr. Moore unfairly disposed of community assets.

## II. SUBMISSION OF THE SECOND, THIRD, AND FIFTH JURY QUESTIONS

In his tenth point of error, Mr. Moore contends that the trial court erred in submitting a jury question regarding the ownership of certain tax exempt bearer bonds. In his twelfth point, Mr. Moore asserts that the trial court erred in submitting a question to the jury regarding the value of personal community farm equipment. Our interpretation of Mr. Moore's thirteenth point is that he contends the trial court erred in jury question 3 styling his annuity as "cash value of life insurance" and inquiring of its value. Lastly, in his fourteenth point, Mr. Moore insists that the trial court erred in submitting a jury question regarding Mrs. Moore's reimbursement claim. For the reasons we have expressed above, we may only review the alleged errors under the "no evidence" standard discussed above.

### A. Tax Exempt Bonds—Point 10

We disagree with Mr. Moore's contention that there was no evidence to justify the trial court's inquiry of the jury as to the ownership of the tax exempt bearer bonds. The record shows that Mr. Moore provided several personal financial statements to Citizens National Bank of Crosbyton, Texas and Western National Bank of Lubbock, Texas, in which he claimed the bonds in question as assets for the years 1989 through 1992. During cross-examination, Mr. Moore testified that he truthfully represented his assets on those statements. Additionally, Mr. Moore tendered the bonds to Citizens National Bank as security for a line of credit. That evidence was sufficient to raise a question as to Mr. Moore's ownership of the bonds; thus, it was not error for the trial court to submit the question to the jury. Accordingly, we overrule point of error ten as far as it pertains to the submission of the jury question regarding the ownership of the bonds.

### B. Farm Equipment—Point 12

In his twelfth point of error, Mr. Moore simply asserts that the trial court erred in submitting a question asking the jury to determine the value of personal community farm equipment. Mrs. Moore admitted evidence in the form of financial statements, individual tax returns, and testimony wherein the fair market value of Mr. Moore's personal farm equipment was represented to be $225,000. On direct examination, however, Mr. Moore testified that a recent appraisal valued the community farm equipment at approximately $50,000.

When a jury trial has been demanded in a divorce case, it is reversible error to fail to submit all disputed fact issues to the jury. *Goetz v. Goetz,* 534 S.W.2d 716, 718 (Tex.Civ.App.—Dallas 1976, no writ). The conflicting testimony above created just such a disputed fact issue as to the value of the personal community farm equipment. Therefore, it was necessary for the trial court to submit the question to the jury. Accordingly, the trial judge did not err in submitting the question asking the jury to determine the value of the personal community farm equipment. We overrule point twelve insofar as it attacks the court's submission of this jury question.

### C. Annuity—Point 13

In his thirteenth point, Mr. Moore contends that "the trial court erred in treat-

ing Mr. Moore's annuity as community property" to be divided in the property settlement. As trial was to a jury,[7] we construe this point as alleging that the trial court erred in treating the annuity as community property in the question it submitted to the jury asking for the cash value of the annuity.[8] Determining that Mr. Moore has waived this alleged error, we overrule point thirteen.

■ It is the rule in Texas that any property possessed by either spouse during marriage, or on dissolution of marriage, is presumed to be community property. Tex. Fam.Code Ann. § 5.02 (Vernon 1993). The burden of proof of rebutting this presumption rests on the party who claims separate ownership of such property. *Horlock v. Horlock,* 614 S.W.2d 478, 480 (Tex.Civ.App.— Houston [14th Dist.] 1981, writ ref'd n.r.e.). Whether the annuity was separate or community property was clearly disputed. Therefore, as Mr. Moore claimed the annuity as his separate property, he bore the burden of proving the annuity's separate character. A necessary corollary of this burden is that Mr. Moore had the obligation of requesting the necessary and proper jury questions as to the separate or community status of the annuity. *See W.O. Bankston Nissan, Inc. v. Walters,* 754 S.W.2d 127, 128 (Tex.1988).

■ The trial court submitted only one question to the jury inquiring as to the community or separate character of property possessed by the Moores during marriage and that question concerned certain real properties. Therefore, in submitting the jury question asking for the value of certain other items in the Moores' possession, including the annuity, the court necessarily "treated" all of the items listed as community property. In doing so, the trial court assumed the truth of a material controverted fact. In order to preserve this error for appellate review, it was necessary for Mr. Moore to present to the trial court a timely objection to the question, stating the specific grounds therefor. Tex.R.App.P. 52(a). However, he did not make a timely objection to the submitted issue nor did he request the question as to the community or separate status be submitted to the jury. By failing to do so, Mr. Moore has waived any error the trial court may have committed in its "treatment" of the annuity in the jury question. *See* Tex.R.Civ.P. 274; Tex.R.App.P. 52(a). Accordingly, point thirteen is overruled.

### D. Reimbursement Claim—Point 14

■ In his fourteenth point, Mr. Moore contends there was no evidence to support the trial court's submission of the jury question regarding Mrs. Moore's claim of reimbursement to the community estate. We disagree.

The record contains a property settlement between Mr. Moore and a former wife, as well as testimony that he owed money to his former wife when he married Mrs. Moore. During cross-examination, Mr. Moore admitted that he paid this personal debt during his marriage to Mrs. Moore. He did not, however, offer any evidence as to what funds, separate or community, were used to pay the separate property debt. Thus, the evidence was sufficient to support the trial court's submission of the jury question inquiring as to whether the community was entitled to any reimbursement from the separate estate of Mr. Moore and, if so, the amount to which it was entitled. Thus, Mr. Moore's fourteenth point is overruled to that extent.

### III. JURY FINDINGS

#### A. Legal or Factual Sufficiency

In the course of his arguments under his fourth, fifth, ninth, tenth, twelfth and four-

---

7. The characterization of property as separate or community, if disputed, is a question of fact for the fact finder, in this case, the jury. *See Smith v. Smith,* 835 S.W.2d 187, 190 (Tex.App.—Tyler 1992, no writ); *Winfield v. Renfro,* 821 S.W.2d 640, 652 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

8. The jury was not asked whether the property was separate or community; rather, the question presented the property as community property and asked the jury to determine its value.

teenth points, Mr. Moore posits the jury's findings regarding the breach of fiduciary duty, the ownership of the bearer bonds, the value of the community farm equipment and the reimbursement claim were not supported by sufficient evidence. Specifically, Mr. Moore asserts that the findings are (1) factually insufficient, (2) legally insufficient, and (3) so against the greater weight and preponderance of the evidence as to be manifestly unjust. Although he does not designate the proper evidentiary standards by which he is challenging the specified findings, we will, nonetheless, address his points and apply the proper standard of review depending on the parties' respective burdens of proof. *See Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264 (Tex.App.—Amarillo 1988, writ denied).

### 1. Breach of Fiduciary Duty— Points 4 and 5

In points four and five, Mr. Moore challenges the legal and factual sufficiency of the evidence to support the jury's findings as to damages for the alleged "breach of fiduciary duty." As we have reversed the last three of the jury's findings as to damages for Mr. Moore's "breach," we need only address the sufficiency of the evidence to support the jury's finding that $14,000 would fairly and reasonably compensate Mrs. Moore for Mr. Moore's disposition of community assets, including time, labor and talent, in transactions which were not fair to Mrs. Moore.

■ Parenthetically, as Mr. Moore does not challenge the jury's finding that he "breached his fiduciary duties," our review is limited to determining whether the amount of the damages awarded for recoupment of Mrs. Moore's share of displaced community time, labor and talent was supported by the proper measure of evidence. The record demonstrates that Mr. Moore knew the value of these intangible items and Mrs. Moore was not cognizant of those values. It is the rule in this state that where facts lie peculiarly within the knowledge of a party and cannot, in the nature of the case, be known to

his adversary, the party having the knowledge has the burden of proving such facts. *Eaton v. Husted*, 141 Tex. 349, 358, 172 S.W.2d 493, 498 (1943); *Matter of Marriage of DeVine*, 869 S.W.2d 415, 424 (Tex.App.— Amarillo 1993, writ denied); *Spencer v. Pettit*, 17 S.W.2d 1102, 1107 (Tex.Civ.App.— Amarillo 1929), *aff'd*, 34 S.W.2d 798 (Tex. Comm'n App.1931). That being so, it was Mr. Moore's burden to prove his contention as to the value of the items. Therefore, we review the legal and factual sufficiency of the evidence to support the jury's answer to this question under the "great weight and preponderance" and "conclusive evidence" standards of review. *See Raw Hide Oil & Gas, Inc.*, 766 S.W.2d at 275.

In passing on Mr. Moore's legal sufficiency challenge, or "conclusive evidence" point, we must examine the record for evidence that supports the findings, ignoring any evidence to the contrary. If there is no evidence to support the findings, we must examine the entire record to determine if a contrary proposition is conclusively established as a matter of law. *Id.* at 276. In considering his factual sufficiency attack, or "great weight and preponderance" point, we must examine the entire record to determine if there is some evidence to support the finding, and then determine whether, in light of the entire record, the finding is manifestly unjust and against the great weight and preponderance of the evidence. *Id.*

■ The record reveals the existence of a corporation in which the community, through Mr. Moore, owned a one-half interest. The other one-half interest was owned by members of Mr. Moore's family. The corporation was formed on March 21, 1986 and was in existence until the date this cause went to trial on January 4, 1993. The corporation reported for the years 1986 through 1991 an average of $15,544.97 a year as net farm profit. For those same years, Mr. Moore reported as net farm profit from his personal farming operations an average of $9,351.87 a year. There was also evidence that, as of 1992, Mr. Moore devoted 10% of his time to the corporation.

Mr. Moore's argument that the marital estate was adequately compensated for his community time, talent, and labor by the increased value of the community property stock is not supported by the record. Mr. Moore did not offer any evidence from which the jury could determine the value of any such increase. There, again, the value of those shares of stock was a matter within Mr. Moore's knowledge and beyond Mrs. Moore's knowledge. We find there was sufficient evidence to support the jury's resolution that the value of Mr. Moore's "time, labor and talent in transactions which were not fair to [Mrs.] Moore" for a period of almost seven years amounted to at least $14,000. Having so determined, we hold that the trial court did not err in granting judgment based on that finding. Accordingly, point of error eight is overruled.

### 2. Tax Exempt Bearer Bonds— Points 9 and 10

 Mr. Moore, in his ninth and tenth points, challenges the jury's finding that the tax exempt bearer bonds belonged to Mr. and Mrs. Moore at the time of the trial. Again, as we noted above, any property possessed by either spouse during marriage, or on dissolution of marriage, is presumed to be community property. Tex.Fam.Code Ann. § 5.02 (Vernon 1993). The burden of proof of rebutting this presumption rests on the party who claims separate ownership of such property. *Horlock*, 614 S.W.2d at 480. It is with this presumption in mind that we review this challenge under the "great weight and preponderance" and "conclusive evidence" standards. *See Raw Hide Oil & Gas, Inc.*, 766 S.W.2d at 275–76.

As stated earlier, the bonds were listed as assets on several financial statements submitted to various banking institutions for the years 1989 through 1992. They were also pledged as collateral to one of the banks for a line of credit. Mr. Moore's bare assertion that the bonds belonged to a friend and that he was only borrowing them to receive the desired financing falls far short of conclusively establishing that the bonds did not belong

to the community. Therefore, we overrule his legal sufficiency challenge to the jury's finding.

As to the question of whether the jury's finding that Mr. Moore owned the bonds at the time of trial is against the great weight and preponderance of the evidence, the record reveals some evidence that the bonds were borrowed. In his testimony, Mr. Moore denied any ownership in the bonds. Additionally, Mr. Moore's accountant testified that he knew nothing of the bonds. The jury, however, is the sole judge of the credibility of the witnesses and, as such, may determine the weight to be given to each witness's testimony. *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547, 549 (1962). As there was ample testimony supporting both positions, the jury's finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust. Mr. Moore's ninth and tenth points are overruled.

### 3. Farm Equipment—Point 12

In his argument under point of error twelve, Mr. Moore maintains that the jury's finding that the personal community farm equipment was worth $225,000 is factually and legally insufficient. Specifically, he contends that the "evidence of the non corporate community property farm equipment being valued at $225,000.00 is not reasonably satisfactory and convincing, and the facts are more consistent with the nonexistence of the ultimate fact."

Mr. Moore's argument is, essentially, that the jury erroneously considered *all* of the farm equipment, including separate property farm equipment and corporate farm equipment, in making its valuation and, thus, the value finding is legally and factually insufficient. We conclude that the evidence is sufficient to support the finding.

 The farm equipment in question was presumed to be community property because it was in Mr. Moore's possession at the time of divorce. *See* Tex.Fam.Code Ann. § 5.02 (Vernon 1993). Therefore, he bore the bur-

den of overcoming the presumption that the equipment was community property by establishing which pieces of equipment were his separate property and which pieces belonged to the corporation. *See Tarver v. Tarver,* 394 S.W.2d 780, 783 (Tex.1965).

In order to rebut the community property presumption, Mr. Moore was required to trace and identify the equipment claimed as separate property or corporate property by establishing the separate character or the corporate ownership of the equipment by clear and convincing evidence. Tex.Fam. Code Ann. § 5.02 (Vernon 1993). While he testified that he had owned certain pieces of the farm equipment before his marriage to Mrs. Moore, he failed to trace such equipment from that time to the present.

Mr. Moore also testified that O.D. Moore Farms, Inc. owned certain pieces of the farm equipment on hand at the time of divorce. Again, however, Mr. Moore failed to adequately trace the equipment allegedly owned by the corporation. His bare assertions that certain equipment was not community property were not sufficient showing to overcome the presumption that the equipment was community property and, as a result, the jury was entitled to consider *all* of the equipment in Mr. Moore's possession at the time of divorce to be community property.

■ Our next determination must be whether the jury's finding as to the value of the farm equipment is supported by sufficient legal and factual evidence. Again, as the value of the equipment was a matter peculiarly within Mr. Moore's knowledge, he had the burden of proving the equipment's value. *See Eaton,* 141 Tex. at 358, 172 S.W.2d at 498; *DeVine,* 869 S.W.2d at 424; *Spencer,* 17 S.W.2d at 1107. Therefore, we review the sufficiency of the evidence under the "conclusive evidence" and "great weight and preponderance of the evidence" stan-

dards. *See Raw Hide Oil & Gas, Inc.,* 766 S.W.2d at 275.

On June 8, 1992, some six months before the date of trial, Mr. Moore submitted a personal financial statement to the Citizens National Bank of Crosbyton. On that statement, he individually listed items of "machinery and equipment" and valued those items at $225,000. There was no other evidence admitted as to any other fair market value for the equipment on hand at the time of the trial.[9] We thus find that the evidence is legally and factually sufficient to justify the jury's finding. Accordingly, point of error twelve is overruled.

#### 4. Reimbursement—Point 14

■ In his fourteenth point, Mr. Moore challenges the sufficiency of the evidence to support the jury's finding that the community estate should receive reimbursement in the amount of $21,096 from Mr. Moore's separate estate. As Mrs. Moore had the burden of establishing the validity and amount of her reimbursement claim, *see Vallone v. Vallone,* 644 S.W.2d 455, 459 (Tex. 1982), we review Mr. Moore's challenges to the legal and factual sufficiency of the evidence under the "no evidence" and "insufficient evidence" standards of review. *See Raw Hide Oil & Gas, Inc.,* 766 S.W.2d at 276.

Mr. Moore introduced into evidence the May 9, 1969 "Property Settlement and Child Custody Agreement" he had entered into with his first wife. That instrument ordered Mr. Moore to execute and deliver a promissory note in the principal amount of $28,128.16 payable to the order of his first wife bearing interest at the rate of 6% per annum. The schedule of payment required four annual installment payments of $7,032.04 each, due on or before the 10th day of January, with the first installment due in 1971. Mr. Moore

---

9. As detailed above, Mr. Moore's testimony that the figure shown on the statement included all of the farm equipment, *i.e.,* separate, community and corporate, did not preclude the jury from determining that all of the equipment was com-

munity and, thereafter, affixing a value to the equipment as a whole. Therefore, his testimony that the value of the farm equipment he deemed as community property was between $40,000 and $45,000 was irrelevant.

and Mrs. Moore were married November 6, 1971, after only one installation had become due. According to the payment schedule included in the property settlement agreement, the balance existing on the note after Mr. and Mrs. Moore married was $21,096.12.

Additionally, Mr. Moore testified on cross-examination that he "did owe some money" to his first wife after he and Mrs. Moore were married. He also admitted that he possibly made three of the four payments during his marriage to Mrs. Moore and that he made "the last payment." There is sufficient evidence in the record to support the jury's finding and we overrule Mr. Moore's fourteenth point challenge to the sufficiency of the evidence to support the reimbursement award.

### B. Error in Following Findings

In his tenth, twelfth, and fourteenth points and under the argument of his eighth point, Mr. Moore contends that the trial court erred in following the jury's findings regarding the breach of fiduciary duty allegation, the ownership of the tax exempt bonds, the value of the personal community farm equipment, and the reimbursement claim for the reason that the evidence was factually and legally insufficient to support the findings. As discussed above, we have found those findings were supported by sufficient evidence; therefore, we hold that the trial court did not err in following the findings of the jury.

### C. Error in Disregarding Findings

Mr. Moore asserts in his fifteenth point that the trial court erred in disregarding the jury finding as to what percentage of the community estate should be allotted to each party to effect a just and right division.[10] It is true that a trial court may not ignore jury findings which extend to issues of fact from which the status of property is determined; however, as Mrs. Moore correctly notes, a jury finding in response to a query regarding a proportionate division of a community estate is advisory only. *Cockerham v. Cockerham*, 527 S.W.2d 162, 173 (Tex.1975); *Archambault v. Archambault*, 763 S.W.2d 50, 51 (Tex.App.—Beaumont 1988, no writ). Because the division of a marital estate and the disposition of its property are issues that are properly determined by a trial court, it is within a trial court's broad discretion to disregard the jury's answers and divide the property as it deems just and right. The test for an abuse of that broad discretion is whether the trial judge acted arbitrarily and unreasonably in making its dispositions. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). This record does not show such an abuse of discretion. Point of error fifteen is overruled.

### IV. DIVISION OF PROPERTY

Section 3.63 of the Texas Family Code provides that "the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage."[11] This provision allows a trial court wide discretion in determining the division of property in divorce actions, *McKnight v. McKnight,*

---

10. A motion to disregard the jury's findings, with notice, is usually required to enable a court to disregard a finding and to preserve alleged error if the court fails to do so. Tex.R.Civ.P. 301; *see Scharer v. John's Cars Inc.*, 776 S.W.2d 228, 230 (Tex.App.—El Paso 1989, writ denied). However, in a marital relations case, such a motion is only necessary when the trial court is attempting to disregard a jury's finding as to the value of certain community property or the character or status of property possessed by the parties. This is true because the jury's findings as to the characterization and valuation of property are binding upon the trial court. *Cockerham v. Cockerham*, 527 S.W.2d 162, 173 (Tex.1975) (court may

not ignore the jury's answers which extend to issues of fact from which the status of property is determined); *Grossnickle v. Grossnickle*, 865 S.W.2d 211, 212 (Tex.App.—Texarkana 1993, no writ) (character and value); *Hirsch v. Hirsch*, 770 S.W.2d 924, 928 (Tex.App.—El Paso 1989, no writ) (findings of fact from which status is determined); *Archambault v. Archambault*, 763 S.W.2d 50, 51 (Tex.App.—Beaumont 1988, no writ) (value).

11. Tex.Fam.Code Ann. § 3.63 (Vernon 1993).

543 S.W.2d 863, 866 (Tex.1976), and a court of appeals is required to indulge every reasonable presumption in favor of the trial court's proper exercise of that discretion. *Murff*, 615 S.W.2d at 699.

## A. Bonds

■ In his eleventh point of error, Mr. Moore argues that the trial court erred in awarding the tax exempt bearer bonds to him as a part of his share of the community property "when the Moores did not own any such bonds." As noted above, the jury found, in response to the specific jury question, that the bonds belonged to Mr. Moore at the time of trial. A trial court may not ignore a jury's answer which extends to issues of fact from which the status of property is determined. *Cockerham*, 527 S.W.2d at 173. The jury's finding that the bonds belonged to Mr. Moore was a fact determinative of the status of the bonds. As a result, the trial court was required to treat the bonds as assets of the community in making a just and right division of the marital estate. As Mrs. Moore was not personally involved in the dealings with the bonds, awarding the bonds to Mr. Moore was the most logical disposition of the property. We find that the trial court did not abuse its broad discretion in awarding the bonds to Mr. Moore as a portion of his share of the community property and overrule Mr. Moore's eleventh point challenge to that action.

## B. Undivided Property

■ In point of error sixteen, Mr. Moore contends that the trial court erred in ordering, in its judgment, that any community property not otherwise awarded by the divorce decree is to be owned by Mr. Moore and Mrs. Moore in equal undivided interests.

Specifically, he argues that "[t]he division of property following a decree of divorce" is governed by sections 3.90–.93 of the Texas Family Code [12] and that "[a]ny property not divided is not owned in equal interests under those statutory provisions."

In rebuttal, Mrs. Moore argues that the division does not constitute reversible error because the statutes do not supplant the common law rule that parties to a divorce hold community property, undivided by the divorce decree, as tenants in common. Moreover, Mrs. Moore asserts that "there appears to be little if any basis for [Mr. Moore's] complaint" because the trial court divided all of the community estate.

Prior to 1987, it was the common law rule in Texas that community property not partitioned or divided upon divorce was held by the former spouses as tenants in common or joint owners. *Harrell v. Harrell*, 692 S.W.2d 876, 876 (Tex.1985); *Busby v. Busby*, 457 S.W.2d 551, 554 (Tex.1970); *Taylor v. Catalon*, 140 Tex. 38, 166 S.W.2d 102, 104 (1942). It was also the rule in Texas that a suit for partition of such former community property was the proper means of dividing the property between the tenants in common. *Harrell*, 692 S.W.2d at 876. Such a suit was permissible only if the record in the divorce action revealed, as a matter of law, that all of the property owned by the community was not disposed of by the decree. *Thompson v. Thompson*, 500 S.W.2d 203, 207 (Tex.Civ. App.—Dallas 1973, no writ).

In 1987, the Texas Legislature added sections 3.90–.93 to the Texas Family Code incorporating, in part, the common law rules relating to undisposed community property.[13] Section 3.90 provides, as relevant, that "[p]roperty not divided or awarded to a spouse in a final decree of divorce or annulment may be divided in a suit under this

---

**12.** Tex.Fam.Code Ann. §§ 3.90–.93 (Vernon 1993).

**13.** Act of July 20, 1987, 70th Leg., 2d C.S., ch. 50, sec. 3, 1987 Tex.Gen.Laws 160, 161. In 1989, the Texas Legislature adopted an amend-

ment so as to make these sections applicable to decrees of divorce and annulment rendered *before*, on, or after November 1, 1987. Act of May 26, 1989, 71st Leg., R.S., ch. 371, sec. 10, 1989 Tex.Gen.Laws 1462, 1466.

subchapter."[14] The relevant portions of section 3.91 provide that "[i]f a final decree of divorce or annulment rendered by a Texas court failed to dispose of property subject to division under section 3.63 of this code ... the court shall divide the property in a manner that the court deems just and right...."[15]

The only significant departure these sections made from the common law is in applying the "just and right" division rule to property not covered by the final divorce decree. *See Edlund v. Bounds*, 842 S.W.2d 719, 730 (Tex.App.—Dallas 1992, writ denied). If the language of the decree does not encompass all of the community property, the ex-husband and ex-wife still hold the undivided property as joint owners. An original suit for partition of the property is now brought under section 3.90 and the trial court is to divide the undisposed of property in a manner that it deems just and right.[16] The trial judge is no longer required by the tenets of property law to make an equal division based on each party's undivided one-half interest,[17] rather, he is to consider "the rights of each party and any children of the marriage" in making his division. *Haynes v. McIntosh*, 776 S.W.2d 784, 786 (Tex.App.—Corpus Christi 1989, writ denied).

Just as the common law rules applied only to undivided marital property, the statutory provisions are also only invoked when the divorce decree fails to specifically dispose of all of the community assets and there is no residuary clause. *See Hicks v. Hicks*, 546 S.W.2d 71, 73 (Tex.Civ.App.—Dallas 1976, no writ) (where a decree does not contain a clause providing for the disposition of other property not specifically mentioned, property not mentioned is not disposed of by the decree and is subject to partition).

In this case, the contested provision of the divorce decree provides:

> IT IS FURTHER ORDERED AND DECREED, as part of the division of the estate of the parties, that any community property or its value not otherwise awarded by this Decree shall continue to be owned by the parties in equal undivided interests.

This residuary clause effectively disposed of *all* of the community property not specifically referred to and divided between the parties in the divorce decree. *See Tharp v. Tharp*, 772 S.W.2d 467, 468 (Tex.App.—Dallas 1989, no writ); *Carreon v. Morales*, 698 S.W.2d 241, 245 (Tex.App.—El Paso 1985, no writ); *Jacobs v. Cude*, 641 S.W.2d 258, 260 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Teaff v. Ritchey*, 622 S.W.2d 589, 592 (Tex.App.—Amarillo 1981, no writ); *Bloom v. Bloom*, 604 S.W.2d 393, 394–95 (Tex.Civ.App.—Tyler 1980, no writ). *But see Ewing v. Ewing*, 739 S.W.2d 470, 472–73 (Tex.App.—Corpus Christi 1987, no writ) (residuary clause did not divide retirement benefits). Therefore, the statutory procedures and mandates of sections 3.90–.91 were not applicable in this case and the trial court did not err in ordering that the community property "not otherwise divided" be owned by Mr. Moore and Mrs. Moore in equal undivided interests. Accordingly, we overrule point of error sixteen.

## C. Damages

■ In the argument under his seventeenth point, Mr. Moore asserts that if dam-

---

**14.** The statute further provides: "(b) The suit may be brought by either former spouse. (c) The suit must be filed before two years after the date on which a former spouse unequivocally repudiates the existence of the ownership interest of and communicates that repudiation to the other spouse." Tex.Fam.Code Ann. § 3.90(b), (c) (Vernon 1993).

**15.** Section 3.92 addresses a situation where community property was not divided because the trial court lacked jurisdiction to divide the property and section 3.93 authorizes an award of attorney's fees when a proceeding to partition or divide the remaining community property is brought.

**16.** The absolute right to partition has not been abrogated, rather, the only change made by the sections is in the manner in which the partition is to be made.

**17.** *See Thompson*, 500 S.W.2d at 207.

ages were properly awarded for a breach of his fiduciary duty, the damages should have been divided as part of the community estate. This argument is bottomed on the premise that damages for the breach or, as discussed above, fraud on the community, are awarded as a recoupment of the community property that has been improperly disposed of by the defrauding spouse. That being so, he reasons, the recovery is a community asset to be divided as part of the division of the marital estate.

Mr. Moore is correct in that a recovery for fraudulently transferred property is a community asset which the court may consider in the division of the marital estate. However, the question posed to the jury only queried the jury as to the amount of damages that Mrs. Moore suffered, not the amount of damages the community incurred.[18] *Cf. DeVine,* 869 S.W.2d at 422 (the jury question read: What sum of money, if paid in cash, would fairly and reasonably compensate the *community* estate of Jack DeVine and Rita DeVine for the damages, if any, resulting from the transfer or transfers made by Rita DeVine to third party or parties?). Therefore, the question necessarily asked the jury to determine only Mrs. Moore's share of the community property that was fraudulently transferred and the trial court did not err in awarding to Mrs. Moore the full amount of the damages for Mr. Moore's dereliction as found by the jury.

Parenthetically, our holding would be the same if we found that the damage award was to serve as compensation to the community, as a whole, rather than solely as compensation to Mrs. Moore for her share of

lost community assets. A trial court may award community property to one or the other spouse as part of the disposition of marital property attendant to divorce proceedings. *Pemelton v. Pemelton,* 809 S.W.2d 642, 648 (Tex.App.—Corpus Christi 1991), *rev'd on other grounds, sub nom. Heggen v. Pemelton,* 836 S.W.2d 145 (Tex.1992). We overrule Mr. Moore's seventeenth point of error.

### D. Just and Right

Mr. Moore also argues, in his seventeenth point, that the trial court abused its discretion in its division of the marital estate, resulting in a division that was not "just and right." His argument is that the division is unjust because Mrs. Moore received a disproportionate amount of the community property. More specifically, he argues that the trial court's error in awarding to him the bearer bonds, the annuity, the reimbursement award, and the farm equipment resulted in an "award to Mrs. Moore [of] such a disproportionate share of the estate as to be an abuse of discretion."

Based on our above holdings that there was sufficient evidence to support the reimbursement award and the valuation of the farm equipment and to show that the bonds and the annuity were assets of the community, we find that the trial court did not err in considering those items in its division of the community estate.

The chart below represents the trial court's division of the community assets and liabilities.

### COURT'S DIVISION

| MR. MOORE, Appellant ASSETS | | MRS. MOORE, Appellee ASSETS | |
|---|---|---|---|
| Household furniture, furnishings, etc. | 50 | Household furniture, furnishings, etc. | 500 |
| Clothing, jewelry, personal effects | 200 | Clothing, jewelry, personal effects | 4,100 |
| Checking Account—Citizens National Bank | 0 | House in Crosbyton | 67,500 |
| Checking Account—First National Bank | 0 | Lot adjacent to house | 3,000 |

**18.** As we have previously reversed the other damage awards regarding the breach, we only consider the remaining award for Mr. Moore's unfair disposition of community "time, labor and talent."

**MR. MOORE, Appellant**

**ASSETS**

| | |
|---|---|
| O.D. Moore Farms, Inc. stock | 250,000 |
| Tax exempt bearer bonds | 65,000 |
| Unsold crops | 1,900 |
| Accounts Receivable—Associated Cotton Growers | 1,400 |
| One-half unpaid patronage dividends | 0 |
| Payments due from A.S.C.S. | 24,000 |
| Farm equipment | 225,000 |
| Reimbursement claim | 21,096 |
| 1992 Chevrolet truck | 15,000 |
| 1993 crop preparation expense | 500 |
| Annuity policy | 21,000 |
| Federal Land Bank funds | 35,000 |
| TOTAL: | $660,146 |

**DEBTS**

| | |
|---|---|
| Citizens Nat'l Bank | 10,000 |
| Federal Land Bank | 126,000 |
| Federal Income Tax | 50,000 |
| Debt on O.D. Moore Farms, Inc. | 50,000 |
| TOTAL: | $236,000 |
| TOTAL NET | $424,146 |
| Money judgment | − 40,000 |
| Division judgment | − 120,000 |
| Attorney's fees | − 15,000[19] |
| TOTAL: | − 175,000 |
| NET AWARD: | $249,146 |

**MRS. MOORE, Appellee**

**ASSETS**

| | |
|---|---|
| Checking Account—Citizens National Bank | 0 |
| One-half unpaid patronage dividends | 0 |
| Chrysler automobile | 8,000 |
| Retirement account | 47,300 |
| Annuity policy | 25,000 |
| TOTAL: | $155,400 |

**DEBTS**

| | |
|---|---|
| Lien on house | 28,680 |
| TOTAL: | $ 28,680 |
| TOTAL NET | $126,720 |
| Money judgment | + 40,000 |
| Division judgment | + 120,000 |
| Attorney's fees | + 15,000 |
| TOTAL: | + 175,000 |
| NET AWARD: | $301,720 |

WIFE = 54.77% of Net Estate
HUSBAND = 45.23% of Net Estate

■ Reducing Mrs. Moore's award by the $26,000 erroneously awarded her for Mr. Moore's "breach of fiduciary duty" would result in her receiving 50.05% of the net estate and in his receiving 49.95% of the net estate. As we have noted above, under Section 3.63(a) of the Texas Family Code, the trial court's obligation is "to order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex.Fam.Code Ann. § 3.63(a) (Vernon 1993). This provision imposes upon the trial court the duty to make an equitable division of the estate, considering the conditions and needs of the parties and all the surrounding circumstances. *Carle v. Carle,* 149 Tex. 469, 234 S.W.2d 1002 (1950). Factors the trial court may consider are the nature of the community estate, the disparity of the earning power of the parties, and the size of the parties' separate estates. The court may also consider the spouses' capacities and abilities, relative physical conditions, business opportunities, and relative financial conditions. *Murff,* 615 S.W.2d at 699.

19. Although an award of attorney's fees is not a separate judgment, it is considered in determining the fair and just division of the marital estate.

*Carle v. Carle,* 149 Tex. 469, 234 S.W.2d 1002, 1005 (1950).

In making a "just and right" division, the trial court is vested with broad discretion. *Massey v. Massey,* 807 S.W.2d 391, 398 (Tex.App.Hous.1991). Such discretion allows the trial court to award one party more than one-half of the marital estate if equity demands such a division. *Murff,* 615 S.W.2d at 699. Moreover, the court's division of the estate of the parties should be corrected on appeal only where an abuse of discretion is shown by establishing that the disposition of the estate is manifestly unfair and unjust, *Murff,* 615 S.W.2d at 699; *Hedtke v. Hedtke,* 112 Tex. 404, 248 S.W. 21 (1923), or where an abuse of discretion is shown. *McKnight v. McKnight,* 543 S.W.2d 863, 866 (Tex.1976).

Although the trial court, in response to Mr. Moore's request for findings of fact and conclusions of law, found that "equitable considerations favor a disproportionate division of the parties in favor of [Mrs. Moore]," the court's division was not unreasonably disproportionate. Clearly, under the circumstances of this case, the trial court's division was not manifestly unfair and fell within the bounds of its discretion. Mr. Moore's seventeenth point is overruled.

In final summary, in view of our holding that the trial court erred in awarding Mrs. Moore $26,000 in damages for Mr. Moore's "breach of fiduciary duty," if Mrs. Moore files a remittitur in that amount within twenty (20) days, the judgment will be affirmed. If she does not do so, the portion of the judgment making division of the property will be severed and remanded to the trial court for a division of the property. The remainder of the judgment would then be affirmed. *See McKnight,* 543 S.W.2d at 866.

### ON APPELLEE'S REMITTITUR AND MOTIONS FOR REHEARING

Both appellant and appellee have filed motions for rehearing. After reviewing the challenges raised in those motions, we remain convinced that our original disposition of the case is correct. Consequently, both motions for rehearing are overruled.

Additionally, in our original opinion we stated that the judgment of the trial court would be affirmed if appellee submitted a remittitur in the amount of $26,000 to this court within twenty (20) days after the opinion was delivered. Appellee has timely filed such a remittitur. Accordingly, the judgment of the trial court is reformed on a remittitur of $26,000 and as reformed, the judgment is affirmed.