NO. 07-01-0085-CV
 


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS


 

AT AMARILLO



PANEL C



MAY 22, 2002


______________________________



ELIZABETH MOSER Individually and as INDEPENDENT


EXECUTRIX of the ESTATE OF MALCOLM MOSER, DECEASED,




 Appellant


v.



DONALD L. DAVIS and DONALD L. DAVIS, P.C., 




 Appellee

_________________________________



FROM THE 222ND DISTRICT COURT OF OLDHAM COUNTY;



NO. OCI-99L-041; HON. WILLIAM R. SHAVER, PRESIDING


_______________________________



Before QUINN, REAVIS and JOHNSON, JJ.

 Appellant, Elizabeth Moser, individually and as independent executrix of the estate
of Malcolm Moser, deceased (collectively referred to as Moser) appeals from a take nothing
judgment entered in favor of Donald L. Davis and Donald L. Davis, P.C. (collectively
referred to as Davis). Via five issues, Moser contends that 1) Kelli Walden (Kelli), Davis'
secretary, was acting in the course and scope of her employment as a secretary of Davis
on August 19, 1997, as a matter of law, 2) the trial court found, as a matter of law, that
Walden acted within the scope of her employment, 3) the finding that Walden was outside
the course and scope of her employment in creating, drafting and executing wills on behalf
of the Mosers and without Davis knowing of it was against the great weight and
preponderance of the evidence so as to be manifestly unjust, 4) the trial court erred in
submitting issue two without a date specific in the charge, and 5) the finding that Davis was
not negligent was against the great weight and preponderance of the evidence so as to be
manifestly unjust. For the following reasons, we affirm.

Background


 The underlying suit involves a legal malpractice claim asserted by Moser against
Davis, the attorney she hired to prepare reciprocal wills for her and her late husband
Macolm. Because Malcolm did not inform Davis of the identity of the proposed
beneficiaries of a trust that was to be included in the wills, the documents were not
executed before Malcolm was admitted to the hospital in August of 1997. Upon his release
from same, Moser contacted Kelli and told her the wills needed to be finalized because she
was unable to find her husband's prior will. 

 At the time of the call from Moser, Davis was out-of-town. Kelli told Moser of that
fact. Nevertheless, Moser insisted upon the completion of the wills. Furthermore, she
delivered to Kelli the names of various people who Malcolm allegedly selected as the trust
beneficiaries. At that point, Kelli prepared same for signature by the Mosers without
informing Davis, and in preparing it, she selected the provisions to include therein. The two
testators executed the documents in Davis' office on the following day, again without his
knowledge, and Kelli obtained the witnesses necessary to complete the task. So too did
she notarize the signatures placed on the wills. 

 Again, Davis was out-of-town throughout the transaction. Furthermore, Kelli had not
told him of the Mosers' desire to complete the documents. Nor did she tell him that the wills
had been executed once he returned, even though they were being kept in the firm's safety-
deposit box. 

 Subsequently, Malcolm died. At that point, it was discovered that his will did not
dispose of his estate as he allegedly desired. The assets were placed in trust and not
given to Moser. This resulted in suit against Davis for malpractice. A point of contention
at trial concerned whether Kelli acted within the course and scope of her employment when
she sua sponte created the documents and placed them in the safety-deposit box without
Davis' knowledge or consent. The jury found that she did not, and Moser appealed.

Issue One 


 Moser contends, via issue one, that she proved, as a matter of law, that Kelli was
acting within the course and scope of her employment when she prepared and had them
execute the wills. We overrule the point.

 Standard of Review

 The standard of review applicable to claims of legal sufficiency follows. The
appellate court must examine the record for evidence that supports the finding while
ignoring that which contradicts it, and, if there is no evidence to support the finding, the
court must then examine the entire record to determine if a contrary proposition is
established as a matter of law. Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982); Texas
& N.O.R. Co. v. Burden, 146 Tex. 109, 203 S.W.2d 522, 530 (1947); Raw Hide Oil & Gas,
Inc. v. Maxus Exploration Co., 766 S.W.2d 264, 275-276 (Tex. App. - Amarillo 1988, writ
denied).

 Next, employers are liable for the negligent acts of their employees if the employees'
actions fall within the course and scope of their employment. Baptist Memorial Hosp. Sys.
v. Sampson, 969 S.W.2d 945, 947 (Tex. 1998); Hedley Feedlot, Inc. v. Weatherly Trust,
855 S.W.2d 826, 837 (Tex. App.--Amarillo 1993, writ denied) (discussing agents). Though
easily stated, the rule is not easily applied. For instance, it is not enough to simply ask
whether the employee was on the company payroll or company clock when the acts were
committed. Nor is it enough to ask whether the employer provided the means or
instruments utilized by the employee to commit the tort. Though each of the foregoing may
be indicia pertinent to answering the test, Restatement (Second) of Agency §229(2)(b) &
(h) (1958), they are not the test itself. Instead, the latter is a tripartite affair wherein each
element must be satisfied. And, those elements are that the act must be committed 1)
within the scope of the general authority of the servant, 2) in furtherance of the employer's
business, and 3) for the accomplishment of the object for which the servant is employed. 
Robertson Tank Lines, Inc. v. Van Cleave, 468 S.W.2d 354, 357 (Tex. 1971); Gant v.
Dumas Glass & Mirror, Inc., 935 S.W.2d 202, 212 (Tex. App.--Amarillo 1996, no writ). If
the circumstances of the particular case establish the existence of each element, then
liability may be imposed even though the specific act was unauthorized or done contrary
to express orders. Hooper v. Pitney Bowes, Inc., 895 S.W.2d 773, 777 (Tex. App.--Texarkana 1995, writ denied). 

 Next, with regard to the element of general authority, it is important to note that the
conduct must be of the same general nature as that authorized by the employer or
incidental to the conduct so authorized. Restatement (Second) of Agency §229(1). As
mentioned in the Restatement, "a servant is authorized to do anything which is reasonably
regarded as incidental to the work specifically directed or which is usually done in
connection with such work." Id. at comment (a). This implicitly obligates us to compare the
conduct undertaken by the employee with that normally within the realm of the authority
granted employees hired for similar purposes. See id. at §229(2)(a) (stating that whether
or not 1) the act is one commonly done by such servants, 2) the master has reason to
expect that such an act will be done, and 3) the similarity in quality of the act done to that
act authorized are factors to consider in assessing the scope of employment). With this
said, we turn to the issue at hand.

 The record discloses that Kelli was hired as a secretary or administrative assistant
(to be politically correct). Nowhere does it illustrate, however, that she was an attorney or
otherwise licensed to practice law. Thus, as a secretary, she had the authority to do, and
did, things secretarial in nature. For instance, she often typed wills and other legal
documents under the supervision of Davis, received information from clients to provide to
Davis, provided documents to clients from Davis, executed documents at the direction of
Davis, notarized wills, obtained witnesses for the executions of wills, and some times
explained wills to clients. (1) 

 Yet, again, nowhere does either Davis or Kelli testify that Kelli was hired or entitled
to practice law. Indeed, Davis testified that though she typed wills and arranged to have
them executed, she was never authorized to draft one, deliver it to the client, and then
execute it on her own. Similarly, Kelli acknowledged that Davis would not approve of her
doing so. That Davis did and would not approve of such conduct is of extreme import
because in so acting she effectively would be practicing law. See In re Nolo Press/Folk
Law Inc., 991 S.W.2d 768, 770 (Tex. 1999) (stating that the practice of law, which can only
be done by members of the State Bar, includes the provision of advice or the rendering of
any service requiring the use of legal skill or knowledge, such as preparing a will); Olson
v. Estate of Watson, 52 S.W.3d 865, 868 (Tex. App--El Paso 2001, no pet.) (noting that the
use of one's knowledge, training, and experience in the law for the purpose of creating wills
and other legal documents involves the practice of law). And, no one presented evidence
suggesting that practicing law was the type of conduct secretaries were generally
authorized to do or incidental to their general authority. Nor did anyone present evidence
illustrating that Davis hired Kelli to practice law or some how bestowed upon her the
general authority to do so as a secretary. 

 In short, the record is barren of evidence illustrating that Kelli, as a secretary, had
the discretion or authority to render advice and make legal decisions on behalf of Moser
or any other client of Davis. And, it is that authority and the right to exercise same on
behalf of others that distinguishes between an attorney and secretary. It cannot be denied
that legal secretaries and their attorneys work closely together. Nor can it be denied that
much of the ministerial work done in a law office is performed by the secretary. But, that
the two work closely together and the secretary often converts the attorney's thought
processes and oral directives into a tangible work-product does not mean that the secretary
is practicing or can practice law, as that term is contemplated in Nolo Press/Folk and Olson. 
Nor does it permit us to ignore the fact that the two operate in different realms of authority,
one generally ministerial and one discretionary and advisory. And, nothing of record
suggests or establishes that Davis somehow authorized Kelli to pass from one realm to the
other at anytime. Thus, we cannot accept the proposition that, as a matter of law, Kelli had
the general authority to practice law by sua sponte drafting the Moser wills and determining
what provisions to include therein, all without the knowledge of Davis. 

Issue Two 


 Via issue two, Moser contends that the trial court erred in submitting issue number
two to the jury. Issue two read: "On the occasion of the events in question was Kelli
Walden acting in the scope of her employment?" Furthermore, the entirety of appellant's
argument consists of the following:

 In the Charge to the jury, the court instructed the jury that the court had found
that Kell[i] Walden, as an employee of Donald L. Davis, P.C., negligently
misrepresented the contents of the Will of August 19, 1997 to the plaintiff. 
That is a finding as a matter of law that has already beenestablished by the
trial court pursuant to the Charge of the court. The submission of Issue Two
contradicts the court's findings, and should be ignored.[ (2)] 


As can be seen, no authority is cited in support of the argument. Nor does Moser provide
us with substantive analysis. Both were required under Texas Rule of Appellate Procedure
38.1(h). See Vasquez v. State, 22 S.W.3d 28, 31 (Tex. App. - Amarillo 2000, no pet.) 
(discussing the rule as applied to a constitutional issue). And, because neither was
provided, Moser waived her second issue. In re Williams, 998 S.W.2d 724, 730 (Tex. App. -
- Amarillo, no pet.) (holding that the failure to cite authority or provide substantive analysis
results in waiver of the argument).

 Second, to preserve complaint regarding the submission of a jury issue, the
complaining party must timely object at trial. In re Moore, 890 S.W.2d 821, 830-31 (Tex.
App.-Amarillo 1994, no writ). Furthermore, the grounds of the objection must be specific.
Id. Finally, the grounds asserted on appeal must comport with those mentioned at trial. 
Galveston County Fair & Rodeo, Inc. v. Kauffman, 910 S.W.2d 129, 135 (Tex. App.-El
Paso 1995, writ denied) (holding that the complaint was not preserved because the grounds
asserted on appeal differed from those mentioned at trial). While Moser objected to
submission of issue two at trial, the sole ground mentioned did not involve the trial court's
purported finding as a matter of law (under issue one) that Walden was acting within the
course and scope of her employment. Thus, the grounds urged here differ from those
mentioned below, resulting in the waiver of the issue now before us. 

 Yet, assuming arguendo that waiver had not occurred, we would refer the litigants
to our discussion under issue one. There, we found no evidence supporting the proposition
that Kelli acted within her general authority when preparing and executing the will. Having
exceeded her authority in that regard, it hardly follows that, as a matter of law, she was
within her authority when she advised the Mosers about the wills and the legal effect of
their provisions. That too would constitute the practice of law, something Moser failed to
prove Kelli was entitled to do as a secretary. Given this, the trial court could not have
legitimately held (via issue one) that the issue of whether she was so acting was
established adversely to Davis, as a matter of law. 

Issues Three and Five


 In issues three and five, Moser contends that various of the findings by the jury were
against the great weight and preponderance of the evidence and, therefore, manifestly
unjust. Those findings relate to Kelli's operation within the course and scope of her
employment and Davis' negligence. However, neither issue was included in a motion for
new trial as required by Texas Rule of Civil Procedure 324(b)(3). Nor were they expressly
mentioned in Moser's motion for judgment notwithstanding verdict. (3) Consequently, both
arguments were waived. Kratz v. Exxon Corp., 890 S.W.2d 899, 902 (Tex. App.-El Paso
1994, no writ) (holding that the appellant waived his contention regarding the factual
sufficiency of the evidence because it was not included in a motion for new trial).

Issue Four


 In her fourth issue, Moser contends that to the extent issue two was submitted, the
court was obligated to restrict the time referenced therein to August 19, 1997. (4) The latter
is the date on which Kelli drafted the wills on behalf of Moser. Furthermore, the issue was
to be so restricted, according to Moser, because it was undisputed that the secretary
committed negligence in placing the will in the firm's safety-deposit box and omitting to tell
Davis about her doing so. We overrule the point for several reasons.

 First, Texas Rule of Appellate Procedure 38.1(h) requires that the appellant provide
the reviewing court substantive (as opposed to conclusory) analysis of the argument as well
as authority supporting it. In Re Williams, 998 S.W. 2d at 830-31. The analysis provided
us consisted of little more than the statement that "it is undisputed that [Kelli] was in the
scope of her employment in maintaining the Will in the office safety-deposit box " and in
"failing to advise Davis that the new Will had been done . . . ." Furthermore, no rule,
opinion, statute or other legal authority accompanied the brief argument. Accordingly,
Moser did not comply with Rule 38.1(h) and preserve the argument for review. Pankow v.
Colonial Life Ins. Co. of Texas, 932 S.W.2d 271, 274 (Tex. App. - - Amarillo 1996, writ
denied).

 Second, in explaining to the trial court why she believed that she was entitled to an
instruction mentioning August 19th, Moser argued that the 19th was the date on which Kelli
"was" within the scope of her employment. On appeal, however, she asserts that if there
were any date on which one could question whether Kelli acted within the scope of her
employment it was the 19th of August. In other words, the argument proffered here is the
opposite of that urged below. And, because the grounds underlying the objection at bar do
not comport with those mentioned below, Moser again failed to preserve error. Galveston
County Fair & Rodeo, Inc. v. Kauffman, 910 S.W.2d at 135.

 Finally, Moser is asking us to conclude that in performing a task outside the scope
of her employment (i.e. drafting and executing the will), placing the document in the office
lockbox, and then neglecting to tell Davis that she did either, Kelli somehow acted within
the scope of her employment as a matter of law. Simply put, the sum does not logically
arise from its components of the equation. In other words, we do not see how one can be
said to be acting within the scope of authority, as a matter of law, when she does something
outside that scope and secrets that and its product from her employer. 

 Davis did not testify that her failure to disclose the act fell within the scope of her
employment. He merely likened it to negligence. Nor did Moser cite us to either authority
or evidence indicating that one who commits an act outside the scope of authority and fails
to reveal same to the employer somehow makes the act one within the scope of
employment. And, that Kelli may have used the office lockbox to facilitate her deception
(without the knowledge or consent of Davis) matters not for the act upon which all depends
(the creation of the wills) was still outside the scope of employment. So, we cannot say that
Moser was entitled to the proffered jury issue because she indisputably proved that Kelli
acted within the scope of her employment when she placed the will in the lock box and
failed to disclose that to Davis.

 Accordingly, we affirm the judgment of the trial court.



 Brian Quinn

 Justice



Publish 
1. The extent to which she explained the documents she typed to clients went undeveloped. In short,
whether her comments consisted of simple descriptions of the instruments or explanations of their legal
effect is unknown. And, because it is unknown, we cannot simply assume that she undertook to advise those
with whom she spoke about the legal effect or ramifications of those documents. 
2. The supposed finding of the court to which Moser refers is located immediately before issue one
of the jury charge. It reads: "The Court finds that Kelli Walden, as an employee of Don Davis, P.C.,
negligently misrepresented the contents of the Will of August 19, 1997 to Plaintiff." What the trial court
actually meant by the phrase "as an employee of Don Davis, P.C." is not disclosed in the charge or
elsewhere. And, because we do not know, we cannot simply infer that it intended to find or found that Kelli
acted within the scope of her employment when she made the misrepresentations. 
3. Even had they been, that would not have satisfied the requirements of Rule 324(b)(3). Kratz v.
Exxon Corp., 890 S.W.2d 899, 902 (Tex. App.-El Paso 1994, no writ).
4. The requested issue read: " Was Kelli Walden acting in the scope of her employment with Don
Davis, P.C. on August 19, 1997 in preparing and executing Malcomb Moser's will?" The issue actually
submitted read: "On the occasion of the events in question was Kelli Walden acting in the scope of her
employment?"



t-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
p.MsoHeading9, li.MsoHeading9, div.MsoHeading9
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 9 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:9;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoFootnoteText, li.MsoFootnoteText, div.MsoFootnoteText
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoCaption, li.MsoCaption, div.MsoCaption
 {mso-style-noshow:yes;
 mso-style-priority:35;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 mso-pagination:widow-orphan;
 font-size:9.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.MsoFootnoteReference
 {mso-style-noshow:yes;
 mso-style-priority:99;
 vertical-align:super;}
p.MsoTitle, li.MsoTitle, div.MsoTitle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpFirst, li.MsoTitleCxSpFirst, div.MsoTitleCxSpFirst
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Calibri","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-11-0066.CV\(2\)%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-11-0066.CV\(2\)%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-11-0066.CV\(2\)%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-11-0066.CV\(2\)%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-page-numbers:1;
 mso-title-page:yes;
 mso-footer:url("07-11-0066.CV\(2\)%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-11-0066.CV\(2\)%20opinion_files/header.htm") f2;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->








NO. 07-11-00066-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL E

 



JULY
19, 2011

 



 

IN RE MICHAEL ROCKAFELLOW AND MTBC, LTD., RELATORS



 



 

Before HANCOCK
and PIRTLE, JJ., and BOYD, S.J.[1]

 

 

ON PETITION FOR WRIT OF MANDAMUS

            Relators, Michael Rockafellow and
MTBC, Inc., have filed their petition for writ of mandamus, asking this Court
to direct the Respondent, the Honorable Les Hatch of the 237th District Court
of Lubbock County, to vacate the order of January 21, 2011, authorizing the
pre-suit deposition of Rockafellow by real party in
interest, SalonQuest, L.L.C., and disclosure of
documents identifying MTBCs supplier of SalonQuest
products.  We will conditionally issue a
writ of mandamus so directing.

Factual and Procedural History

            On
January 24, 2011, Rockafellow and MTBC filed a notice
of appeal from the trial courts order authorizing SalonQuests
pre-suit deposition of Rockafellow, president of
MTBC, and disclosure of documents related to MTBCs acquisition of SalonQuests hair care products.  See Tex.
R. Civ. P. 202.  Because SalonQuests petition indicated that neither Rockafellow nor MTBC were anticipated defendants in SalonQuests contemplated suit related to the unauthorized
distribution of SalonQuests hair care products, that
appeal was docketed as a regular appeal under cause number 07-11-00022-CV.  However, SalonQuest
amended its petition to indicate that it did, in fact, anticipate bringing
various claims against MTBC.  As a
result, we dismissed that appeal for want of jurisdiction.  In re Petition of SalonQuest,
Inc., No. 07-11-00022-CV, 2011 Tex. App. LEXIS 1535 (Tex.App.Amarillo
Mar. 2, 2011, no pet.); see In re Jorden,
249 S.W.3d 416, 419 (Tex. 2008) (orig. proceeding); Thomas v. Fitzgerald,
166 S.W.3d 746, 747 (Tex.App.Waco 2005, no pet.).

            On
February 10 and in response to SalonQuests
amendment, Rockafellow and MTBC filed their Emergency
Motion for Stay of Deposition and Production of Documents.  In their motion, they again sought review of
the trial courts order authorizing pre-suit deposition of Rockafellow.  At this point, Rockafellow
and MTBC were no longer third parties to the contemplated litigation and were now anticipated defendant[s].  See In re Jorden,
249 S.W.3d at 419.

            In
light of their status as anticipated defendants, mandamus is the proper vehicle
by which they could seek review of the trial courts Rule 202 order.  See In re Hewlett Packard, 212
S.W.3d 356, 360 (Tex.App.Austin 2006, orig.
proceeding).  Consequently, we construed Rockafellow and MTBCs motion as a petition for writ of
mandamus.[2]  We noted, however, that there were a number
of defects present in their petition.  See
Tex. R. App. P. 52.3.  By letter dated February 10, 2011, we
notified the parties of these defects and afforded Rockafellow
and MTBC a reasonable opportunity to cure said defects.  See Tex.
R. App. P. 44.3.  Rockafellow and MTBC amended their petition.  We sought a response from SalonQuest
and received such on April 19.  On May
11, we received a reply on behalf of Rockafellow and
MTBC.

Analysis

Availability of Mandamus

            Again,
because Rockafellow and MTBC are anticipated
defendants in SalonQuests contemplated litigation,
mandamus is the proper vehicle by which to seek the relief requested.  See In re Hewlett Packard, 212 S.W.3d at 360. 
The Texas Supreme Court has held that no adequate appellate remedy
exists if a trial court orders a party to produce privileged trade secrets
absent a showing of necessity.  In re
Bass, 113 S.W.3d 735, 745 (Tex. 2003) (orig. proceeding) (citing In re Contl Gen. Tire, Inc., 979 S.W.2d 609, 615 (Tex. 1998)
(orig. proceeding)).  Further, a trial
court abuses its discretion when it erroneously compels production of trade
secrets without a showing that the information is material and
necessary.  See id. at 738, 743; Walker v. Packer, 827 S.W.2d 833, 840
(Tex. 1992) (orig. proceeding) (concluding that a clear failure by the trial
court to analyze or apply the law correctly will constitute an abuse of
discretion, and may result in appellate reversal by extraordinary writ).   

Trade Secret Privilege Generally

            The
trade secret privilege is governed generally by Texas Rule of Evidence 507:

A person has a privilege, which may be claimed by the person or the
persons agent or employee, to refuse to disclose and to prevent other persons
from disclosing a trade secret owned by the person, if the allowance of the
privilege will not tend to conceal fraud or otherwise work injustice. When
disclosure is directed, the judge shall take such protective measure as the
interests of the holder of the privilege and of the parties and the furtherance
of justice may require.

Tex.
R. Evid. 507.  In the trial
court, the party resisting discovery on the basis of the trade secret privilege
must establish that the information is a trade secret.  In re Contl Gen. Tire, 979 S.W.2d at 613.  The burden then shifts to the requesting
party to establish that the information is necessary for a fair adjudication of
its claims.  Id.  If the requesting party meets this burden,
the trial court should ordinarily compel disclosure of the information, subject
to an appropriate protective order.  Id.  In each circumstance, the trial court must
weigh the degree of the requesting partys need for the information with the
potential harm of disclosure to the resisting party.  Id. 
In other words, when trade secret privilege is asserted as the basis for
resisting production, the trial court must determine whether the requested
production constitutes a trade secret; if so, the court must require the party
seeking production to show reasonable necessity for the requested
materials.  In re Union Pac. R.R. Co.,
294 S.W.3d 589, 591 (Tex. 2009) (orig. proceeding) (quoting In re Bass,
113 S.W.3d at 738).

Is the information sought trade
secret?

            A
trade secret is any formula, pattern, device or compilation of information
which is used in ones business and presents an opportunity to obtain an
advantage over competitors who do not know or use it.  In re Bass, 113 S.W.3d at 739 (quoting
Computer Assocs. Intl. v. Altai, Inc., 918 S.W.2d 453, 455 (Tex.
1994)).  Texas courts consider the
following factors in determining whether the material at issue qualifies for
the trade secret privilege: (1) the extent to which the information is known
outside of his business; (2) the extent to which it is known by employees and
others involved in his business; (3) the extent of the measures taken by him to
guard the secrecy of the information; (4) the value of the information to him
and to his competitors; (5) the amount of effort or money expended by him in
developing the information; and (6) the ease or difficulty with which the
information could be properly acquired or duplicated by others.  In re Union Pac. R.R.,
294 S.W.3d at 592; In re Bass, 113 S.W.3d at 739.  Because trade secret materials may not always
fit neatly into each factor every time and because other factors may also be
relevant depending on the circumstances of a particular case, we will weigh the
factors in the context to determine whether the materials qualify as trade
secret.  In re Bass,
113 S.W.3d at 740.

            In
a situation factually similar to the instant case, our sister court weighed the
factors of the balancing test to determine whether similar requested
information was trade secret.   See
John Paul Mitchell Sys. v. Randalls
Food Mkts., Inc., 17 S.W.3d 721, 726 (Tex.
App.Austin 2000, pet. denied).  Paul
Mitchell involved the same context at issue here: diversion of hair care
products outside the manufacturers preferred closed distribution chain.  Id. at 726.  In that case, Jade Drug Company sold Paul
Mitchell products to Randalls
grocery stores, which are non-salon locations. 
Id.  As was and did Rockafellow, Jade was called on to provide its list of
suppliers and resisted on the basis of trade secret.  Id. 
Jade established by affidavit that there was restricted access to its
supplier list, it took time and money to develop the list, the list was
valuable to the company, and the list was not readily obtained or
duplicated.  Id.
at 738.  The Austin court
concluded that Jade established that the list was carefully compiled and
closely guarded and met its burden of showing that its supplier list was trade
secret.  Id.

            Here,
by affidavit, Rockafellow explained that he has been
in this business for twenty-five years and that it was through substantial
effort and expertise that he developed his vast network of industry contacts
and sources.  He also stated that his contacts
and suppliers are not readily known to the public, and to a large extent, not
readily known in the industry itself.  Rockafellow explained the confidential nature of his
relationship with the suppliers and how MTBCs network of contacts and sources
is the most valuable part of its business without which MTBC could not
compete.  Rockafellow
went on to explain that only he communicates with MTBCs suppliers and, apart
from him, only the office manager and the warehouse manager have access to
information that would enable them to determine the identities of MTBCs
suppliers.  Both managers had been
advised of the importance of keeping such information confidential.  Rockafellows
affidavit also described the ramifications of having to divulge suppliers
identities which, according to Rockafellow, would
quickly culminate in MTBC going out of business.  In light of the relevant factors, we conclude
that Rockafellow showed that access to the
information sought is strictly limited and is not readily accessible, the
information sought is highly valuable to MTBC, and the information sought is
the product of a great deal of time and effort on Rockafellows
part and is not easily accessible or duplicated.  See In re Union Pac. R.R., 294
S.W.3d at 592.

            Seeing
no compelling distinction between the instant case and that examined by our
sister court in Paul Mitchell, we find our sister courts similar
application of the balancing test in this context persuasive and conclude that Rockafellow carried his burden of showing that the supplier
list and information related to the identities of MTBCs suppliers are trade
secret.  In doing so, he successfully
shifted the burden to SalonQuest to establish that
such information was necessary.

Is the Information Necessary or Essential
to Fair Adjudication?

            We
now address the second prong of the test in which we must determine if
discovery of this trade secret material is necessary for a fair adjudication
of SalonQuests claims.  In re Contl Gen. Tire, 979 S.W.2d at 615.  Necessity depends on whether the trade
secrets production is necessary or essential to the fair adjudication of the
case.  In re Union
Pac. R.R., 294 S.W.3d at 592.

            The
Texas Supreme Court has acknowledged that it has not state[d] conclusively
what would or would not be considered necessary for a fair adjudication,
indicating instead that the application of the test would depend on the
circumstances presented.  Id.
(quoting In re Bridgestone/Firestone, Inc., 106 S.W.3d 730, 732 (Tex.
2003)).  Although Rule 202 does not
require a potential litigant to expressly state a viable claim, it appears
that, when the requested deposition and disclosure involve disclosure of trade
secret information, the requesting partys burden is heightened.  See In re Contl
Gen Tire, 979 S.W.2d at 61314.  With this in mind, we examine the general
principles from cases on this subject. 

            It
does appear to be generally accepted that, in order for trade secret production
to be material to a claim or defense, a claim or defense must first exist.[3]  See In re Bass, 113 S.W.3d at
743.  That is, it is not sufficient that
a requesting party use Rule 202 to discover trade secret information to
determine if it has a claim.[4]  See In re Hewlett Packard, 212 S.W.3d at 362. 
Nor is it an adequate showing of necessity when the requesting party
makes general assertions of unfairness.[5]  In re Union Pac. R.R., 294 S.W.3d at
59293; In re Bridgestone/Firestone, 106 S.W.3d at 734 (concluding that
the mere possibility of unfairness is not enough to warrant disclosure of
trade secret).  Further, there are cases
that would suggest that we must also consider the availability of other means
of acquiring the requested information.[6]  See In re Contl
Gen. Tire, 979 S.W.2d at 615 (adopting rule, pre-dating Texas Rule of
Evidence 507, from Automatic Drilling Machs., Inc.
v. Miller, 515 S.W.2d 256, 259 (Tex. 1974), that considers availability
from other sources in determining whether disclosure of trade secret is
warranted); see also In re Bridgestone/Firestone, 106 S.W.3d at
736.

            So,
it would appear that the burden that shifted to SalonQuest
upon the showing that the information it requested was trade secret is a fairly
great one.  And it is one that SalonQuest ultimately failed to satisfy because SalonQuest submitted no evidence in support of its position
that the trade secret information sought was necessary or essential to the fair
adjudication of its claims.  See In
re Union Pac. R.R., 294 S.W.3d at 592. 
The record before us is devoid of evidence on the issue of necessity.

            SalonQuests assertions come
from its amended Rule 202 petition and from arguments of counsel at the hearing
on its petition.  Generally, pleadings
are not competent evidence to prove the facts alleged in them even if, as here,
the pleadings are sworn or verified.  See
Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 660
(Tex. 1995); see also In re Contractors Supplies, Inc., No.
12-09-00231-CV, 2009 Tex. App. LEXIS 6396, at *1516 (Tex.App.Tyler
Aug. 17, 2009, orig. proceeding) (mem. op.) (concluding, in Rule 202 context, that pleadings are not
evidence).  Likewise, argument of counsel
is not evidence.  See
Love v. Moreland, 280 S.W.3d 334, 336 n.3 (Tex.App.Amarillo
2008, no pet.).  With that, we can
only conclude that SalonQuest failed to show that the
trade secret information sought was necessary for a fair adjudication of its
claims.

            In
summary, Rockafellow met his burden of showing MTBCs
list of suppliers was trade secret and, thereby, shifted the burden to SalonQuest to show that disclosure of the information was
necessary for a fair adjudication of its claims.  SalonQuest failed
to make such a showing.  Therefore, the
trial court abused its discretion when it authorized the deposition of Rockafellow and compelled disclosure of trade secret
information.

Conclusion

            Having
concluded that the items in question were trade secrets and not discoverable as
privileged information pursuant to Rule 507 and that Rockafellow,
as a potential defendant, has no adequate remedy by appeal, we conclude that he
has shown he is entitled to mandamus relief as requested.  Accordingly, we conditionally grant the
petition for writ of mandamus and direct the trial court to vacate its order
dated January 21, 2011, authorizing the pretrial deposition of Michael Rockafellow and compelling disclosure of documents
concerning MTBCs acquisition of SalonQuests
products.  Because we are confident the
trial court will comply with this directive, the writ will issue only if the
court fails to do so.  Our disposition of
this case serves to lift the stay previously imposed by the Court.  See Tex.
R. App. P. 52.10(b).

 

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice








 











[1]  John T. Boyd,
Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.





[2]
By order entered February 10, 2011, we also
granted temporary relief by staying the deposition authorized by the trial
court pending the disposition of this petition for writ of mandamus.  See Tex.
R. App. P. 52.10(b).






[3]
As the Austin court pointed out rarely, if ever,
will trade secrets be discoverable pursuant to Rule 202 because Rule 202
discovery will, by definition, be going on before any litigation has
begun.  In re
Hewlett Packard, 212 S.W.3d at 364.

 





[4]
By its own admission at the hearing on its
petition, the existence and nature of SalonQuests
claims, if any, are speculative at best. 
SalonQuest itself expressed uncertainty as to
whether litigation would follow: It is just discovery, and then we can make a
decision, if, in fact, litigation is warranted from that point on.

 





[5]
So, SalonQuests
assertions in its response to this Court that highlight alleged wrongdoing on Rockafellows part are inadequate to satisfy its burden of
showing that the requested information is necessary to the fair adjudication of
its claims, if any.





[6] The Texas Supreme Court most recently explained this
consideration: [T]rade secret information is
generally discoverable when not allowing discovery would significantly impair a
partys ability to establish or rebut a material element of a claim or
defense.  A partys ability is
significantly impaired when the information is unavailable from any other
source and no adequate alternative means of proof exist.  In re Bridgestone/Firestone,
106 S.W.3d at 736.  Here, MTBC has
no contractual relationship with SalonQuest; by SalonQuests own admission, it is MTBCs supplier(s) who
has or have contracts with SalonQuest regarding the
distribution of SalonQuest products.